# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ALAN ROSS MACHINERY CORPORATION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 17-cv-3569 |
| MACHINIO CORPORATION, | ) ) Judge Thomas M. Durkin ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Alan Ross Machinery Corporation brings this action against Defendant Machinio Corporation alleging Machinio "scraped"[1] sales listings of industrial machinery from Alan Ross's website and duplicated those listings on its website. Alan Ross brings five causes of action against Machinio—(1) violation of the Lanham Act, 15 U.S.C. § 1125(a); (2) violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, et seq.; (3) breach of contract; (4) unjust enrichment; and (5) tortious interference with prospective business advantage. Before the Court is Machinio's motion to dismiss the complaint in its entirety. For the reasons explained below, Machinio's motion is granted.

---

[1] "Web scraping, also known as web harvesting or web data extraction, is data scraping used for extracting data from websites using automated 'bots' or 'spiders.' It is a process whereby an automated piece of software extracts data from a website by 'scraping' through the site's many pages." R. 3 ¶ 11.

## BACKGROUND

Machinio is "a global search engine for finding used machinery and equipment." R. 3 ¶ 15. Machinio's "database contains more active machinery listings than any other website." *Id*. Alan Ross claims to be the "largest vendor of used and new scrap processing and recycling equipment." *Id*. ¶ 5. It maintains a website listing machinery for sale. There are no allegations that Alan Ross manufactures the machinery it sells. *See, generally, id*. Alan Ross alleges that Machinio is one of its "direct competitors" in the "scrap processing and recycling equipment business." *Id*. ¶ 14.

At some point between September 27, 2016 and October 24, 2016, Alan Ross and Machinio discussed using Machinio's website to list Alan Ross's content for sale. *Id*. ¶¶ 15-16. Alan Ross eventually decided not to list its content on Machinio's website. *Id*. ¶ 17. Alan Ross then alleges it "expressly demanded that Machinio not scrape Alan Ross's website." *Id*. ¶ 18. Nevertheless, Machinio used web scraping techniques to extract Alan Ross content without consent, and duplicated Alan Ross listings on Machinio's website. *Id*. ¶¶ 19-21. Alan Ross demanded that Machinio remove the listings and Machinio complied. *Id*. ¶¶ 41-42. Alan Ross's website contains terms and conditions that state that visitors to the website "may not copy, reproduce, modify, create derivative works from, nor distribute content from this site without

our prior written consent" but that "reproductions and derivatives are available for $500 US Dollars per asset." *Id.* ¶ 13.

Alan Ross brings five claims against Machinio for its alleged "scraping" of Alan Ross's website. First, it alleges Machinio's unauthorized use of Alan Ross's listings violates the Lanham Act because it causes confusion as to the "affiliation, connection or association of Machinio with Alan Ross, or as to the origin, sponsorship, or approval of Machinio's goods, services or commercial activities by Alan Ross." *Id.* ¶¶ 26-27. Second, it alleges Machinio violated the CFAA by knowingly and with intent to defraud accessing Alan Ross's protected computers and/or servers without authorization. *Id.* ¶ 35. Third, Alan Ross brings a breach of contract claim alleging Machinio breached the website's terms and conditions when it scraped the listings. *Id.* ¶¶ 39-45. Fourth, Alan Ross alleges Machinio has been unjustly enriched through its web scraping. *Id.* ¶ 50. Finally, Alan Ross alleges Machinio tortiously interfered with its prospective business advantage by republishing Alan Ross's machinery on Machinio's website and materially diminishing traffic to Alan Ross's website. *Id.* ¶ 55. Machinio has moved to dismiss all five claims.

## DISCUSSION

### I. Standard of Review

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See, e.g., Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide

3

defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Mann*, 707 F.3d at 877.

## II. Lanham Act, 15 U.S.C. § 1125 (Count I)

"Congress passed the Lanham Act in 1946 to 'federalize' existing common law protection of trademarks used in interstate commerce." *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 672 (7th Cir. 2001). It established a federal right of action for trademark infringement to protect both consumer confidence in the quality and source of goods and businesses' goodwill in their products. *Id*. Alan Ross brings its

4

claim under the "false endorsement" provision[2] of the Lanham Act, which imposes liability upon:

> Any person who, on or in connection with any goods or services . . . uses in commerce any . . . false designation of origin, false or misleading description of fact, or false or misleading misrepresentation of fact, which is likely to cause confusion or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods . . . by another person.

15 U.S.C. § 1125(a)(1)(A).

To state a claim of false endorsement, Alan Ross must allege two elements. *Segal v. Geisha NYC LLC*, 517 F.3d 501, 506 (7th Cir. 2008). First, it must allege that "its mark is protected under the Lanham Act." *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1043 (7th Cir. 2000). Second, Alan Ross must allege that the challenged mark is "likely to cause confusion among consumers." *Id.*

**A. Protectible Mark**

A trademark identifies a particular product or service as coming from a particular manufacturer or service provider. 15 U.S.C. § 1127; *Hoopla Sports and Entm't, Inc. v. Nike, Inc.*, 947 F. Supp. 347, 353 (N.D. Ill. 1996) (explaining that a trademark is a "distinctive mark of authenticity" through which products of

---

[2] Alan Ross's complaint suggests it also brings a "reverse passing off" claim under the Lanham Act, R. 3 ¶ 2, and a claim regarding misappropriation of "exclusive rights," *id.* ¶ 26. Machinio addressed both claims in its motion to dismiss arguing they were deficient, R. 17 at 10-12, but Alan Ross failed to respond to those arguments. Instead, it addressed only a claim of "false endorsement." R. 24 at 4-6. Accordingly, Alan Ross has waived any claim of "reverse passing off" or misappropriation of "exclusive rights," and the Court will address only the "false endorsement" claim. *See 7241 W. 100th Place Corp. v. Vill. of Bridgeview*, 2014 WL 517961, at *3 (N.D. Ill. Feb. 6, 2014) (failing to respond to an argument in opposition to a motion to dismiss results in waiver).

particular manufacturers may be distinguished from those of others). A party may obtain "a protectable right in a trademark only through the use of the mark in connection with its product." *Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.*, 188 F.3d 427, 433 (7th Cir. 1999). Alan Ross must show appropriation of the mark and "use in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of [Alan Ross]." *Id.* at 433-34. "Only active use allows consumers to associate a mark with particular goods." *Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499, 503 (7th Cir. 1992).

Here, there are no allegations that "Alan Ross Machinery" was used in a trademark sense to distinctively identify the machinery or the machinery listings. The complaint does allege that "[e]ach webpage presented to users of Alan Ross Machinery's website contains Alan Ross Machinery's copyright symbol." R. 3 ¶ 25. But that does not describe "appropriation of the mark" by Alan Ross to allow the public to identify certain goods as those of Alan Ross. Alan Ross has failed to show that it has a protectible trademark in the machinery listings. *S. Illinois Storm Shelters, Inc. v. 4SEMO.com, Inc.*, 2015 WL 5062769, at *7 (S.D. Ill. Aug. 26, 2015) (in summary judgment context, corporate name did not constitute protectible trademark without evidence that the company considered it a trademark and identified its products under the name).

### B. Likelihood of Confusion

Even if Alan Ross had alleged a protectible mark, it has failed to allege a likelihood of confusion among consumers. "The key issue in a false endorsement case

6

is whether defendant's use of the mark to identify its goods or services is likely to create confusion concerning the plaintiff's sponsorship or approval of those goods or services." *Stayart v. Yahoo! Inc.*, 651 F. Supp. 2d 873, 882-83 (E.D. Wis. 2009), *aff'd*, 623 F.3d 436 (7th Cir. 2010). "Plaintiff must be able to show that the public believes that the mark's owner sponsored or otherwise approved of the use of the trademark." *Id.* at 883. But here, there can be no likelihood of confusion—Alan Ross does not allege its name even appears on Machinio's website. *See* R. 3, Ex. B (screenshot of website that allegedly violated the Lanham Act); R. 24 at 5 ("However, knowing that it did not have Alan Ross Machinery's approval, Machinio hid Alan Ross Machinery's name from its reproduction on its website."). Accordingly, Machinio could not have lulled consumers into believing that Alan Ross had endorsed Machinio's listings.

In response to the motion to dismiss, Alan Ross argues that the "click to contact seller" button next to every listing (R. 3, Ex. B) confuses the public as to whether Alan Ross endorsed Machinio's conduct and as to the source of the content. R. 24 at 5. But even if that button leads consumers to Alan Ross, that does not imply that Alan Ross has endorsed Machinio or has any specific affiliation with Machinio to support a false endorsement claim. "This is not the reality of commerce." *Hart v. Amazon.com, Inc.*, 191 F. Supp. 3d 809, 819 (N.D. Ill. 2016), *aff'd*, 845 F.3d 802 (7th Cir. 2017). In *Hart*, the court dismissed a false endorsement complaint against Amazon for allowing third-party sellers to list the plaintiff's books, noting that "a shopper at a bookstore does not automatically believe that just because a used book is appearing at the store, the author is expressly endorsing that store." *Id.* The same is true here. Even if

7

Machinio had listed Alan Ross's name on its website, that does not suggest a consumer would be misled into believing that Alan Ross had endorsed Machinio's website.

At bottom, the Court simply cannot conclude that Alan Ross has alleged a plausible claim under the Lanham Act for false endorsement. *See Martin v. Wendy's Int'l, Inc.*, 183 F. Supp. 3d 925, 936 (N.D. Ill. May 2, 2016) (dismissing false endorsement claim because "it is not plausible that any consumer would be likely to be confused about whether plaintiff endorsed" the product when "[t]here is no language directly or indirectly suggesting that plaintiff endorsed defendants' products, nor do the plaintiff's name and record appear in a context that might, by its nature, plausibly mislead consumers to believe that plaintiff endorsed defendants' products").

Because Alan Ross has not alleged a protectible mark and because it has failed to allege a likelihood of confusion among consumers as to whether Alan Ross has endorsed Machinio's listings, Alan Ross has failed to state a false endorsement claim under the Lanham Act.

### III. Computer Fraud and Abuse Act (Count II)

The CFAA prohibits acts of computer trespass by unauthorized users and creates a civil remedy for "[a]ny person who suffers damage or loss by reason of violation of this section." 18 U.S.C. § 1030(g). The CFAA defines damage as "any impairment to the integrity or availability of data, a program, a system, or information." *Id*. § 1030(e)(8). Courts have interpreted "damage" to include "the

destruction, corruption, or deletion of electronic files, the physical destruction of a hard drive, or any diminution in the completeness or usability of the data on a computer system." *Farmers Ins. Exch. v. Auto Club Grp.*, 823 F. Supp. 2d 847, 852 (N.D. Ill. 2011). The "mere copying of electronic information from a computer system is not enough to satisfy the CFAA's damage requirement." *Id.* The CFAA defines "loss" as the "reasonable cost" of "responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11).

Machinio correctly argues that Alan Ross's CFAA claim must be dismissed because Alan Ross has failed to allege any damage or loss. R. 17 at 12-13. Indeed, all Alan Ross alleges is that "Alan Ross Machinery has been harmed." R. 3 ¶ 36. That is not enough to survive a motion to dismiss.[3] A plaintiff's obligation to "provide the 'grounds' [of] 'entitlement to relief' requires more than labels and conclusions, and a

---

[3] Throughout its response, Alan Ross argues that its complaint has satisfied the "notice-pleading standard" sufficient to survive a Rule 12(b)(6) motion to dismiss, and that it need not plead any additional facts to support its theories. *See* R. 24 at 2, 3, 6, 9. "As the Seventh Circuit has explained, 'it is of course true that many pleading-standards cases both before and after *Twombly* and *Iqbal* refer to 'notice,' but the point is that it is *necessary* to give the defendants notice of the claims against them, not that giving the defendants notice is *sufficient* to state a claim. By emphasizing a plausibility requirement, *Twombly* and *Iqbal* obviously require more than mere notice. When ruling on a motion to dismiss, the court must review the complaint to determine whether it contains enough facts to raise a reasonable expectation that discovery will reveal evidence to support liability for the wrongdoing alleged. An inadequate complaint will not survive a motion to dismiss simply because the defendants managed to figure out the basic factual or legal grounds for the claims.'" *Spector v. Mondelez Int'l, Inc.*, 178 F. Supp. 3d 657, 671 (N.D. Ill. 2016) (*quoting Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014)).

formulaic recitation of a cause of action's elements will not do." *Twombly*, 127 S. Ct. at 1965. Alan Ross alleges no facts to raise a reasonable expectation that it suffered damage or loss sufficient to bring a claim under the CFAA. *See, e.g., Garelli Wong & Assocs., Inc. v. Nichols*, 551 F. Supp. 2d 704, 711 (N.D. Ill. 2008) (dismissing complaint with allegations that defendant's "conduct caused losses to [plaintiff] in excess of $5,000," finding such pleading insufficient under *Twombly*). Count II fails to state a claim for relief under the CFAA.

## IV. State Law Claims (Counts III to V)

Alan Ross's remaining claims are state law claims for breach of contract, unjust enrichment, and tortious interference with prospective business advantage. Because the Court has dismissed Alan Ross's federal causes of action, it need not exercise supplemental jurisdiction over these state law causes of action. *See* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (3) the district court has dismissed all claims over which it has original jurisdiction."). However, because the Court will allow Alan Ross the opportunity to amend its complaint to address the issues identified in this opinion, it briefly addresses the state law claims as well.

### A. Breach of Contract (Count III)

The terms and conditions on Alan Ross's website state that visitors to the website "may not copy, reproduce, modify, create derivative works from, nor distribute content from this site without our prior written consent; and reproductions and derivatives are available for $500 US Dollars per asset." R. 3 ¶ 13. In Count III,

Alan Ross alleges Machinio violated those terms and conditions by reproducing content from the website without paying the $500 proscribed. *Id.* ¶ 42.

Alan Ross's terms and conditions are what is known as a "browsewrap" agreement, where users are bound to the terms by merely navigating or using a website. *See Sgouros v. TransUnion Corp.*, 2015 WL 507584, at *6 (N.D. Ill. Feb. 5, 2015), *aff'd*, 817 F.3d 1029 (7th Cir. 2016) (citing Michelle Garcia, Browsewrap: *A Unique Solution to the Slippery Slope of the Clickwrap Conundrum*, 36 Campbell L. Rev. 31, 35-36 (2013)). Such agreements do not require users to "sign a document or click an 'accept' or 'I agree' button," so users are considered to give assent "simply by using the website." *Id.* Courts enforce browsewrap agreements only when there is actual or constructive knowledge of terms. *Id.* When there is no evidence that users had actual knowledge of the terms at issue, "the validity of a browsewrap contract hinges on whether a website provided reasonable notice of the terms of the contract, *i.e.*, whether users could have completed their purchases without ever having notice that their purchases are bound by the terms." *Id.*

Alan Ross argues that it demanded that Machinio not scrape Alan Ross's website for content, but Machinio did so anyway, leading to the "only reasonable inference" that "Machinio stole that content from Alan Ross Machinery's website with express knowledge or, at a minimum, constructive knowledge of Alan Ross Machinery's terms and conditions." R. 24 at 8. But for a breach of contract claim, it is not enough to allege that Machinio was told not to scrape the website. Instead, Alan

Ross must allege that Machinio had knowledge of the terms and conditions. *Sgouros*, 2015 WL 507584 at *6. Alan Ross has made no such allegations.

In its response to Machinio's motion to dismiss, Alan Ross argues that Machinio had constructive knowledge of the terms and conditions because of their conspicuous placement on the website. *See* R. 24 at 8 (arguing the terms and conditions link was prominently displayed and appeared at the bottom of every webpage). Nevertheless, hyperlinking the terms and conditions at the bottom of every page is insufficient to provide adequate constructive notice to create a contract based on a browsewrap agreement. *See Hussein v. Coinabul, LLC*, 2014 WL 7261240, at *3 (N.D. Ill. Dec. 19, 2014) ("Although the hyperlink's font is adequately contrasted by the color of its background, the hyperlink's location—buried at the bottom of the webpage—is, without some additional act of notification, insufficient for the purpose of providing reasonable notice."); *In re Zappos.com, Inc., Customer Data Sec. Breach Litig.,* 893 F. Supp. 2d 1058, 1064 (D. Nev. 2012) ("The Terms of Use is inconspicuous, buried in the middle to bottom of every Zappos.com webpage among many other links, and the website never directs a user to the Terms of Use," which was insufficient to find a contract existed); *Cvent, Inc. v. Eventbrite, Inc.*, 739 F. Supp. 2d 927, 937 (E.D. Va. 2010) (assertions that the terms of use were hyperlinked at the bottom of a page and prominently displayed on the website were insufficient to state a plausible claim for breach of contract).

Without allegations that Machinio had notice of their existence, the terms and conditions are not an enforceable agreement. *See Sgouros*, 2015 WL 507584 at *7

("[T]his Agreement is not a valid browsewrap agreement because it did not provide sufficient constructive notice to users that they are being bound by the terms in the Window by using the website."); *Van Tassell v. United Mktg. Grp., LLC*, 795 F. Supp. 2d 770, 793 (N.D. Ill. 2011) ("Accordingly, the Court finds that because the ChefsCatalog.com website fails to provide reasonable notice of the Conditions of Use, there was not a valid agreement to arbitrate."). Alan Ross fails to state a breach of contract claim because it fails to allege an enforceable contract exists.

### B. Unjust Enrichment (Count IV)

To state a claim for unjust enrichment, Alan Ross must allege that "[Machinio] has unjustly retained a benefit to [Alan Ross's] detriment, and that [Machinio's] retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011).

Here, Alan Ross fails to allege anything but conclusory allegations that Machinio "derived a benefit from its unlawful, unauthorized and willful web scraping and copying of Alan Ross Machinery's Assets from Alan Ross Machinery's website" as Alan Ross's competitor. R. 3 ¶¶ 14, 49. Alan Ross also fails to allege any detriment. In response to the motion to dismiss, it argues that Machinio's scraping of the listing conferred a benefit to Machinio that "would have otherwise accrued to Alan Ross Machinery's benefit." R. 24 at 12. But it is not clear how Machinio's listing of Alan Ross's machinery hurts Alan Ross. After all, Machinio is not a vendor, but rather a global search engine. Listing on Machinio's search engine would presumably benefit

13

Alan Ross, by allowing more potential buyers and sellers to view the machinery. Alan Ross has failed to allege a plausible theory of unjust enrichment.

### C. Tortious Interference with Prospective Business Advantage (Count V)

To state a claim for tortious interference with economic advantage under Illinois law, Alan Ross must allege: (1) its reasonable expectancy of entering into a valid business relationship; (2) Machinio's knowledge of the expectancy; (3) Machinio's intentional and unjustifiable interference that induced or caused a breach or termination of the expectancy; and (4) damage to Alan Ross resulting from Machinio's conduct. *F:A J Kikson v. Underwriters Lab., Inc.*, 492 F.3d 794, 800 (7th Cir. 2007). To establish the intent element, Alan Ross must allege that Machinio directed wrongful conduct at a third-party business prospect to induce the third party to end its relationship with Alan Ross. *See Sunny Handicraft Ltd. v. Envision This!, LLC*, 2015 WL 231108, at *8 (N.D. Ill. Jan. 16, 2015). Alan Ross fails to make such allegations. All it alleges is that Machinio "knew of Alan Ross Machinery's website and [of] its marketing the Assets on that website." R. 3 ¶ 53. It does not allege that Machinio directed its conduct at Alan Ross's business prospects to induce them to end their relationship with Alan Ross. And as described above, Machinio does not sell the machinery—it connects buyers and sellers, presumably helping Alan Ross, a vendor, to buy and sell more machinery through additional marketing. Alan Ross has failed to plausibly allege that Machinio intended to induce a third party to end its

relationship with Alan Ross. Alan Ross has therefore failed to state a tortious interference with prospective business advantage claim.

## CONCLUSION

For the foregoing reasons, Defendant Machinio's motion to dismiss the complaint, R. 16, is granted without prejudice. If Plaintiff Alan Ross Machinery believes it can cure the deficiencies identified in this opinion, it may file a motion for leave to file an amended complaint on or before July 30, 2018. The motion should attach a redlined comparison between the current complaint and the proposed amended complaint, and it should be supported by a brief of no more than five pages describing how the proposed amended complaint cures the deficiencies in the current complaint. Machinio is not to file a response unless directed to do so by the Court.

ENTERED:

*Thomas M Durkin*

Dated: July 9, 2018

\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-
Honorable Thomas M. Durkin
United States District Judge