**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ALAN ROSS MACHINERY CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 17-cv-3569 |
| | ) | |
| MACHINIO CORPORATION, | ) | Judge Thomas M. Durkin |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

In its Second Amended Complaint ("SAC"), Alan Ross Machinery Corporation alleges Defendant Machinio Corporation "scraped" sales listings of industrial machinery from Alan Ross's website and duplicated those listings on its website, in violation of the Digital Millennium Copyright Act ("DMCA"). R. 55. Before the Court is Machinio's motion to dismiss the SAC. For the following reasons, Machinio's motion is granted.

### STANDARD OF REVIEW

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Berger v. Nat. Collegiate Athletic Assoc.*, 843 F.3d 285, 289 (7th Cir. 2016). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018).

## BACKGROUND

This is the Court's third opinion addressing various iterations of Alan Ross's complaint. The Court's second opinion addressed Alan Ross's DMCA claim for the first time. R. 47. Any reference to the Court's previous opinion here will refer to that opinion.

Like its previous complaints, Alan Ross alleges Machinio extracted data related to approximately 2,000 sales listings of certain machinery from the Alan Ross website and reproduced those listings on the Machinio website. R. 55 ¶ 34. Here, Alan Ross adds that Machinio also scraped Alan Ross's "source code."[1] *Id.* ¶ 36. Alan Ross

---

[1] Alan Ross uses this term. Machinio points out, however, that what Alan Ross calls "source code" is more accurately called "HTML Markup." Machinio explains that "source code" refers to a computer programming language, such as JavaScript, that can modify and manipulate data. "HTML Markup" is the written information that defines the structure of webpages and determines how they are displayed. It "marks up" data so the web browser understands what data should be displayed as a header, footer, paragraph, or link, etc. Alan Ross does not address Machinio's description of

2

alleges that Machinio's web scraping software "parsed the entirety of every page of [Alan Ross's] website it requested." *Id*. ¶ 33. Because Alan Ross's copyright notice and terms of use are located on each page, Machinio's reproduction of the listings required it to "review, ignore and remove approximately 2,000 of [Alan Ross's] copyright notices and links to its Terms of Use." *Id*. ¶ 35.

Machino then reproduced the photographs and the verbatim descriptions on its own website. *Id*. ¶ 36. Each page of Machinio's website contained its own copyright notice. *Id*. ¶ 37. Machinio's website also contains a "Terms of Use" page, which states that its site and "all Services and Content, including any and all copyrights therein, is the property of Machinio." *Id*. ¶ 27.

Alan Ross alleges that Machinio violated the DMCA when it removed Alan Ross's copyright management information (or "CMI") from its listings and its source code and when Machinio conveyed false CMI in connection with the reproduced listings on its own website. Machinio has moved to dismiss for a third time, arguing that Alan Ross has still not alleged that CMI was removed from Alan Ross's listings or that any false CMI was conveyed in connection with the reproduced listings on Machinio's site. Machinio also argues that Alan Ross has yet to allege an injury.

## DISCUSSION

The DMCA seeks to hamper copyright infringement in the digital age by

---

HTML Markup in its response to Alan Ross's motion to dismiss. However, upon reviewing what Alan Ross calls "source code," it appears that the proper term is "HTML Markup." The Court need not delve into the technicalities of this distinction, but it will use the term used by Alan Ross.

3

protecting CMI in various ways. 17 U.S.C. § 1202. Specifically, it prohibits distributing false CMI, *id*. § 1202(a), and removing or altering CMI, *id*. § 1202(b). CMI is information about the copyright "conveyed in connection" with the work and includes information such as the author of the work, the title of the work, copyright symbols, and the name of the copyright owner. *Id*. § 1202(c). The point of CMI is to inform the public that something is copyrighted and to prevent infringement. *Pers. Keepsakes, Inc. v. Personalizationmall.com, Inc.,* 975 F. Supp. 2d 920, 928 (N.D. Ill. 2013).

In its previous opinion on this issue (R. 47), the Court held that Alan Ross's allegations that its webpages contained CMI through a general copyright notice were not sufficient to infer that the listings, photographs, or descriptions in those listings contained CMI. R. 47 at 4-5. As a result, the Court held that Alan Ross had failed to allege Machinio removed CMI when it scraped listings from Alan Ross's website or falsely conveyed CMI in its republication.

Alan Ross now repeats those allegations by alleging that each page of its website, including each page for a particular item, contains a notice that the pages are copyrighted by Alan Ross. Alan Ross also alleges that its source code conveyed CMI in connection with the individual pages of Alan Ross's website, and that together, "the copyright notice displayed in the footer of the pages of ARM's website and the source code for the footer are referred to as 'ARM's Copyright Notices.'" R. 55 ¶ 17. Further, Alan Ross's website contains a separate "terms and conditions" page that warns visitors that copying from the site is prohibited without prior written

consent. Every page on Alan Ross's website has a link to the terms and conditions in the footer. *Id.* ¶ 18. Alan Ross alleges that these copyright notices and terms and conditions links were CMI that Machinio removed from the listings it copied.

As the Court has already held, Alan Ross has failed to allege that when Machinio copied the photographs and listings from its website, it removed CMI from those photographs and listings. At the bottom of each page on Alan Ross's website, there is a general copyright notice that states "© 2018 - Alan Ross Machinery Corporation." But that notice does not indicate to what it refers. The notice does not specify that it refers to the photographs or the listings. Indeed, the copyright notice appears on each page of Alan Ross's website, regardless of whether there is only one listing and photograph on the page or several. *See* R. 55-1 (one listing with copyright notice); 55-2 (several listings with same copyright notice). But Alan Ross admits that it does not own at least some of the photographs on its website. R. 55 ¶ 12 ("The photographs are either the property of ARM or the property of the seller of the item, used by ARM with the seller's permission."). And, there is a clear demarcation between the listings and the copyright notice. *See* 55-1 (showing dotted line demarcating the end of the "New Mobile Hammermill Shredder" listing, followed by four listed hyperlinks and then the general copyright notice). Accordingly, the only plausible explanation is that the copyright notice refers to the actual pages of the website. *See id.* ¶ 14 ("Each page of ARM's website, . . . displays a notice in the footer that the pages are copyrighted by ARM."); ¶ 15 ("Pages of ARM's website that display an aggregation of listings of items for sale, . . . display a notice in the footer that the

pages are copyrighted by ARM."). Again, however, Alan Ross does not allege that Machinio copied Alan Ross's *pages*, only the photographs and descriptions contained in the listings. "Without allegations that Machinio removed or altered any CMI from the listings it allegedly copied, Alan Ross fails to allege a violation of 17 U.S.C. § 1202(b)." R. 47 at 5.

Alan Ross's allegations also fail because it does not allege Machinio removed or altered CMI conveyed "in connection with" the photographs or listings. A number of courts have held, persuasively, that "a defendant must remove the CMI from the 'body' or the 'area around' the work to violate DMCA." *Pers. Keepsakes, Inc. v. Personalizationmall.com, Inc.,* 2012 WL 414803, at *7 (N.D. Ill. Feb. 8, 2012); *GC2 Inc. v. Int'l Game Tech. PLC*, 255 F. Supp. 3d 812, 821 (N.D. Ill. 2017) (link to the defendant's terms of use at the bottom of every webpage was not conveyed with the artwork displayed there; courts "have generally required more than a boilerplate terms of use notice near a copyrighted work" to find liability for distributing false CMI); *Stevens v. CoreLogic, Inc.*, 194 F. Supp. 3d 1046, 1052 (S.D. Cal. 2016) (granting summary judgment against plaintiff who claimed that defendant distributed false CMI when it displayed its own copyright notice on the same webpage as plaintiff's photographs); *Schiffer Publishing, Ltd. v. Chronicle Books, LLC*, 2004 WL 2583817, at *4 (E.D.Pa. Nov. 12, 2004) (finding no DMCA violation where a book contained 118 copyrighted photos with no CMI near them and plaintiff had a general copyright notice on the whole book). This interpretation "is consistent with the text of the statute, which requires the CMI to be 'conveyed' with the copyrighted work." *Pers.*

6

*Keepsakes*, 2012 WL 414803, at *7 (citing 17 U.S.C. § 1202(c)). "Such a rule prevents a 'gotcha' system where a picture or piece of text has no CMI near it but the plaintiff relies on a general copyright notice buried elsewhere on the website." *Id*.

Here too, where the only CMI displayed by Alan Ross appears on the website's footer, not on the works or images themselves, the only conclusion the Court can reach about the general copyright notice at the bottom of Alan Ross's website is that it has some intellectual property rights in its own website, not that it is claiming ownership of a copyright to all of the photographs or information contained in the listing.[2] *See Pers. Keepsakes,* 975 F. Supp. 2d at 929.

Alan Ross argues that it is "implausible" that "a viewer of the parties' websites would not understand that the CMI in the footers referred to the Copied Listings." R. 60 at 10. But as the Court previously stated, "websites generally do not claim ownership or authorship over an image just because the image appears on the website." *Tomelleri v. Zazzle, Inc.*, 2015 WL 8375083, at *12 (D. Kan. Dec. 9, 2015). Here, there is simply nothing to suggest that the copyright notice applied to anything other than Alan Ross's website. *Leveyfilm, Inc. v. Fox Sports Interactive Media, LLC*, 999 F. Supp. 2d 1098 (N.D. Ill. 2014), which Alan Ross cites, shows the distinction. There, the Court held that the CMI at issue on the back of the record ("Photography: Don Levey, Don Levey Studio") plausibly referred to the photograph at the front of

---

[2] While the photographs are likely subject to copyright protection as to the photographer (not necessarily Alan Ross according to its own allegations), it is less clear that the listings themselves are so subject. But because neither party discusses it, the Court need not reach the issue.

7

the record. *Id*. at 1102-03. In that case, the notice was clearly referring to the photography contained in the record. Here, Alan Ross's copyright notice is simply too general to put the public on notice that the listings are subject to copyright protection. This is particularly true given the number of listings seen on any one page. It is simply not reasonable to expect a viewer of the website to understand that each photograph was subject to protection when there is nothing near the photographs indicating who owns them. Had Alan Ross intended to assert copyright protection for the photographs it owned, it should have included a watermark or other mark on or near the listings, rather than a general copyright notice at the bottom of the page that does not indicate to what it refers.

The Court recognizes that Alan Ross cites to a recent out-of-circuit case, *Pierson v. Infinity Music & Entm't, Inc.*, 300 F. Supp. 3d 390 (D. Conn. 2018), that held that a link to terms of use at the bottom of a website constituted false CMI conveyed with photographs when they were displayed on that website. Although *Pierson* analyzed the same cases and held the opposite from what the Court finds here, the Court does not find it persuasive given the abundance of case law in this District that suggests that a general copyright notice on the bottom of a webpage is not CMI "conveyed in connection with" photographs and listings contained on those webpages. A general copyright notice on the bottom of the page simply does not "inform the public that something is copyrighted" to prevent infringement.[3]

---

[3] *Pierson* is also distinct because the plaintiff there had registered her photographs with the copyright office (which the Court acknowledges is not a requirement to bring

8

For similar reasons, Alan Ross's new allegations regarding its source code also do not constitute CMI conveyed with the listings. Again, Alan Ross does not allege that the CMI contained in the source code referred to anything but the pages themselves (or perhaps the instructions for how the pages were laid out). Again, Alan Ross does not allege that Machinio copied the pages or those instructions. Instead, it alleges Machinio copied only its desired content. R. 55 ¶ 36 (Machinio "reproduced the photographs and verbatim descriptions" of the listings, as parsed from everything else in Alan Ross's source code); *id*. ¶ 4 ("Because the web scraping software parses all of the content for a page of a website, it necessarily reviews all of the source code before copying only the content selected by the scraper."). Alan Ross does not allege any CMI was contained with the listings copied, even within the source code.

Finally, as the Court explained in its prior opinion, the link to Alan Ross's terms and conditions also is not CMI conveyed in connection with the work. Alan Ross's terms and conditions are located on a separate page than the listings copied. And, the terms and conditions do not even state that Alan Ross owns any of the information contained in its website—only that visitors are prohibited from copying and distributing content from the site without Alan Ross's consent. R. 55 ¶ 18 ("You may not copy, reproduce, modify, create derivative works from, nor distribute content from this site without our prior written consent; and reproductions and derivatives are available for $500 US Dollars per asset."). While Machinio's terms of use on a

---

an action), and had been injured through loss of revenue that she otherwise would receive in selling her photographs. *Pierson*, 300 F. Supp. 3d at 392.

9

separate page do suggest that the "site and all services and content" are subject to copyright protection (*id.* ¶ 27) (perhaps falsely so), those terms of use are not conveyed in connection with the works at issue because they too are located on a different page. *See Pers. Keepsakes*, 2012 WL 414803, at *7 ("[A]s a matter of law, if a general copyright notice appears on an entirely different webpage than the work at issue, then that CMI is not 'conveyed' with the work and no claim will lie under the DMCA.").

In any event, Alan Ross's SAC fails for an independent reason—it has failed to allege that it is a "person injured" as required by the DMCA to bring a claim under the statute. 17 U.S.C. § 1203(a) states that "Any person injured by a violation of section 1201 or 1202" may bring an action to enforce the DMCA. Although the Court notified Alan Ross of its failure to allege any injury in its previous opinion, Alan Ross again fails to allege an injury associated with Machinio's violation of the DMCA. Instead, it continues to allege that Machinio caused confusion in the marketplace: "By reproducing the Copied Listings on its website, Machinio caused third-party websites such as Google to falsely represent that the copied listings were Machinio's property and caused some actual and potential buyers to conclude the same." R. 55 ¶ 44. But as the Court previously stated, that confusion does not plausibly amount to an injury, such as reduced sales or advertisements, particularly because Machinio does not sell any products. That § 1203(c) allows for statutory damages in lieu of actual damages does not change the first requirement that Alan Ross be injured before it can bring a claim under the Act. Alan Ross's failure to allege

any injury, despite several opportunities to do so, is fatal to its claim.

## CONCLUSION

For the foregoing reasons, Defendant Machinio's motion to dismiss the Second Amended Complaint, R. 56, is granted with prejudice.

ENTERED:

_Thomas M Durkin_

Dated: March 22, 2019

Honorable Thomas M. Durkin
United States District Judge